FOWLER & MOORE *v.* ISAAC B. PAYNE.

1. LANDLORD AND TENANT—CONTRACT—CONSTRUCTION.—F. and P. purchased a house and lot in the city of Meridian. P. leased the premises for five years at $100 per month, half to be paid to F., the half owner. It is stipulated in the written agreement "each party is to pay one-half the amount due upon deed of trust under which the property was sold, and half of all other expenses incurred in making said purchase, the whole debt amounting to $4000, and each bear one-half the expenses of insuring and repairing said property, as may be mutually agreed upon. This contract, though informal, must be construed to be a covenant to insure and repair.

2. COVENANT TO REPAIR.—A covenant to repair is equivalent to a covenant to rebuild. Taylor's Landlord and Tenant, 234 § 4: 5 Cush. 226; 35 Miss. 618.

3. CONTRACT—RENTS AFTER PREMISES DESTROYED BY FIRE.—A lessee of premises which are burned has no relief against an express covenant to pay the rent, either at law or in equity, unless he has protected himself in the lease, or the landlord has covenanted to rebuild. In case of a lease with covenants for the payment of rent on the one part and to repair on the other, a refusal to rebuild by the lessor upon

the destruction of the tenement during the term, will, in equity at least, excuse the lessee from the payment of rent, or to such relief as the circumstances may warrant.

4. SAME—RECOUPMENT.—While the non-observance of covenants to repair may not be the subject of set-off in an action for rent, yet a breach of these covenants constitute a good defense by way of *recoupment.* 2 Comst., 283; 38 Ill.. 293; 37 Ill., 17; 7 Hill, 53.

5. SAME.—In actions of *assumpsit* to recover damages for the breach of an agreement, the defendant may set up by way of *recoupment,* under a proper notice, that the plaintiff has violated the same agreement, and thus defeat a recovery for more than the balance. The rule is one of obvious equity, and is susceptible of ready and convenient application, and prevents a needless multiplicity of suits.

Appealed from the chancery court of Lauderdale county. HON. THOS. CHRISTIAN, Chancellor.

The facts of the case are fully stated in the opinion of the court.

*W. C. Ford,* for appellant.

The question at issue in this case is substantially the same whether it arises on the demurrer to the bill, motion to dissolve the injunction, or upon the decree rendered upon the bill, answer and exhibits. It is purely a question of law, growing out of the construction of the written agreement entered into by and between Payne and Fowler.

The court erred in overruling the motion to dissolve the injunction, as it had before in overruling the demurrer to the complainant's bill.

First, in what relation did that agreement place Fowler and Payne toward each other, and toward the real estate in common or jointly owned? The answer to that question is important, as out of that relation, whatever it is, grows all the litigation in the case. We hold that the language of the agreement creates a lease of five years, to Payne from Fowler, of his, Fowler's, half interest in said property. The language means something. It is a lease, or it is not. What is a lease for years? " It is a contract for the possession and profits of land for a determinate period with recompense of rent, payable in money or other things." Bacon's Abr. Tit. Lease, vol. 5, 433.

That Payne and Fowler were joint tenants, or tenants in common of the property, made no difference as to their legal capacity to lease to each other. "If one joint tenant make a lease for years to his companion, it is good," and he may so contract with his companion "as with a stranger." Bacon's Abr. Tit. Lease, vol. 5; 563; Coke Lit., 186a; Roll Abr., 851; Taylor on Landlord and Tenant, § 115.

No forms of words are necessary to make a lease. It is sufficient that it appear to be the intent of the parties "that one shall divest himself of the possession, and the other come into it, for a determinate period," and whether the words are in the form of an agreement, license or covenant, they are sufficient, and will as effectually amount to a lease in law "as if the most proper and pertinent words had been used." Bac. Abr. T. Lease, vol. 5, 601.

Having shown that the effect of the said agreement is to establish the relation of landlord and tenant between Fowler and Payne, as an inevitable consequence, all the rights and responsibilities growing out of that relation attach to each as conclusions of law. Payne agrees to take the house at the rent valuation of $100 per month, "$50 to be paid to T. N. Fowler (the other joint purchaser), payments to be made by said Payne of said half rent quarterly, etc. This promise of Payne, as tenant, to pay said rent to Fowler, as landlord, is without any condition, limitation or restriction. It embraces, too, every element of a valid contract. That the parties were legally competent to contract; that they did contract, and that there was a valuable consideration to support the contract is not denied. Upon what ground, then, can it be contended that Payne is released from his legal obligations to comply with his contract? In the court of law defendant set up, (1), that the rented property was destroyed by fire, and he was released from payment of rent; (2,) that Fowler refused to assist in rebuilding. These matters of defense were adjudged upon demurrer insufficient in law; and defendant, after obtaining leave to plead further, then filed his bill in

chancery for relief, setting up the same matters as a defense, and adding that it would be "unconscionable" for Fowler or Moore, his assignee, to insist upon payment of rent after the destruction of the property.

The court should have sustained the motion to dissolve the injunction, for the reasons set forth in the motion.

1st. That the matters alleged as grounds for an injunction, had been adjudicated in a court of law.

The transcript of the record from the county court, shows that defendant set up there the same matters of defense that he afterwards alleged in this bill for injunction. That the case there was tried or adjudicated upon demurrer, makes no difference, as there is not, nor can there be, any dispute about the facts in the case. A judgment upon a demurrer is as much an adjudication and as final, as if tried by any other means, the facts being admitted.

That the same questions of law having been adjudicated once by a court having jurisdiction thereof, cannot be adjudicated again between the same parties, is a legal proposition not to be denied. Payne elected to first set up his defense in a court of law. Having done so, and failed, he cannot now invoke the aid of a court of chancery by setting up the same matter in a bill for an injunction. A court of chancery may have been the proper tribunal for him in the first place; but having presented his defense in a court of law, he must abide by the decision of that court. The question of *res adjudicatæ*, in such cases, is fully discussed in Hilliard on Injunctions, § 74, (note A), §§ 75 and 77, in which last section it is said: "So a defendant, who has demurred to the declaration, will be regarded as having elected to defend at law, and will be precluded from coming into equity for relief in reference to any matter of defense which he might have availed himself of in a court of law." Arrington v. Washington, 14 Ark., 218. "So if a defendant make an equitable defense, if it be such as courts of law take cognizance of, he cannot come into chancery for relief, unless un-

avoidable accident, ignorance of facts, surprise or fraud have prevented him from making his defense at law." Burton v. Hyson, 14 Ark., 32; 7 Gill, 189. The transcript of the record shows that in the court of law the identical matter was set up as a defense, which is now alleged in the bill as ground for an injunction. Such being the fact, we hold that the authorities referred to make the first adjudication conclusive upon the defendant.

2d. The bill upon its face does not show any ground for equitable relief. As heretofore shown, it is a lease by Fowler to Payne for five years.

There is an express contract, in the agreement by Payne, to pay rent. What will excuse Payne from payment of that rent according to his covenant? It is a well established principle of law, that if the law impose a duty or charge upon a man, the act of God or a public enemy will excuse him; but if he, by his own act, impose a duty or charge upon himself, he is bound, at all events, to perform it; for he might have made exceptions, if he had seen proper to do so. This principle was first enunciated in Taverner's case, 1 Dyer, 33; 8 Henry, 8. It is again asserted in the case of Paradine v. Jane, 26 Aleyn, where a tenant sought to avoid the payment of rent, because Prince Rupert, with a foreign army, had, by force, deprived him of possession of the premises. It was held by Rolle, justice, who heard the case, that "neither an inundation nor a hostile army would release the defendant from the payment of the rent." See also, Monk v. Cooper, 2 Strange, 763.

Chancellor Kent, 3 vol., 601, after referring to these and other cases, says: "The same doctrine has been continued to this day, and it is well settled that upon an express covenant to pay rent the loss of the premises by fire, or an inundation, will not excuse the party from his obligation to pay rent." Hallett v. Wylie, 3 Johnson, 44; Earl of Chesterfield v. Duke of Bolton, Comyn, 627; Bullock v. Dommitt, 2 Chitty, K. B., 608; S. C., 6 Term, Rep. 650; Allen v. Culver, 3

Denis, 284; Lane v. Ross & Co., 10 Ohio, 412; Chitty Con., 630; Story Con., § 668; 2 Saunders, Rep, 422; Baker v. Haltzappell, 4 Taunton, 45; Lord Raymond, 1477; Balfour v. Weston, 1 T., Rep. 310. See Jamerson v. McDaniel, 25 Miss. Rep. 85, and Harman v. Fleming, ib., 135, in both of which Justice Yerger asserts the same principle of law.

An express contract binds to performance, (Shubrick v. Salmon, 3 Burr., 1637.) If covenant be express, there must be an absolute performance, nor shall it be discharged by any collateral matter whatsoever. Espinassu's Nisi-Prius, vol. 1. 269. In support of this position we refer also to Dermott v. Jones, 2 Wallace, and the case of the ship B. L. Harrimon, 9 Wallace, 161; U. S. Rep's; also, Beebe v. Johnson, 19 Wendell, 500; and Beal v. Thomas, 3 Bosan, and Pull., 420.

In the case of Baker v. Haltzappell, in which the facts are very similar to this, and in that of Hare v. Groves, (4 Aust., 687,) relief in equity was denied, and Chancellor Kent, 3, 602, says these two cases, and others, settled the question that the tenant had no relief in equity against the payment of rent. Upon this point: The liability of the tenant to pay rent after the destruction of the premises, the opinion of the court below, as shown in its decree, is inconsistent with itself. The opinion admits the premises; that is, the liability of the tenant, but denies the conclusion; that is, that he must pay the rent. It admits that he is liable for the rent, but refuses to decree that he is bound to pay it, or that he shall pay it.

The agreement shows that Payne agreed expressly to pay Fowler rent quarterly, at the rate of $50 per month, without any condition, limitation, or restriction. The court of law decided that he must pay it, that the destruction of the house, and the refusal of Fowler to rebuild, constituted no defense against payment. The authorities all sustain the proposition, that the express agreement to pay rent, cannot be avoided or relieved against in a court of law or equity, unless there is an express provision, or exception, that, upon the happening

of a certain event, the rent shall cease. In Monk v. Cooper, 2 Strange, 763, the court said : " If tenant (defendant) has an injury, he has his remedy, but he cannot set it off against the demand for rent." In that case there was a covenant upon the part of the lessee to repair, except the premises be destroyed by fire. Defendant set up as a defense that plaintiff would not rebuild, yet at the same time sued for rent, and the court decided he had a right to do so.

The covenant to pay rent and the covenant to repair, if any, are independent covenants. If he, the landlord, " expressly covenanted to repair, the tenant cannot quit and discharge himself of the rent because the repairs were not made, unless there is a *provision to that effect.*" 1 Parsons, 422 ; Surplice v. Farnsworth, 7 M. & Gran., 576. See also, Weigall v. Walters, 6 T., Reps. 230 ; 1 Parsons, Con., 423 and 426 ; Price v. Blackman, 3 Vesey, 34 and note.

Apply these rules of law to the case before the court. Fowler, lessor, did not agree to repair or rebuild, and if he had done so, that would have been no defense for Payne when sued for the rent. Admitting, then, that Fowler had made the contract which the court below, by construction, makes for him, even in that case, Payne could not set it up as a defense against the payment of rent. In the case in 7 Mann. and Gran., cited, the court says : "That, though a landlord may be bound to repair, yet if the premises become unfit for use' or occupation, and the landlord *refuses to repair*, still the tenant cannot quit the premises, but is responsible for the rent ; and no accident to the demised property, or misfortune to the lessee, will relieve him from his express covenant to pay rent. Taylor on Landlord and Tenant, 272.

This principle of law is now too well established to be called in question, and the Legislature of New York, so regarding it, has enacted a law regulating the liability of tenants in certain cases where this principle is involved.

4th. Will a court of chancery relieve a tenant from his covenant to pay rent, because the building is burned, or premises become unfit for use ?

The prayer of the bill of Payne, appellee, is, that the court enjoin the appellant from prosecuting his suit at law, and that he, complainant, be relieved from payment of rent until Fowler or Moore, or both of them, assist in rebuilding the house.

We have referred to the case of Baker v. Haltzappell, 18 Vesey, in which an injunction was denied in a case very similar to this one. This case seems to have settled the question in the English courts. In Patterson v. Ackerson, 1 Ed. Chan., 96, the question of granting such relief to a tenant is fully discussed. The Chancellor, after referring to numerous cases in England and America, says: "The first of the cases (after 1773) is Hare v. Groves, 3 Anst., where a tenant, having covenanted to repair, damages by fire only excepted, and being sued at law for rent which accrued after the premises were destroyed by fire, the court of exchequer refused to relieve him. Chief Justice McDonald reviewed the former decisions and decided that there was no defense against an action at law; so the tenant had no remedy in equity against the effect of his express covenant to pay rent during the term."

After referring to the case of Baker v. Haltzappell, he says: "The like decision was made by the supreme court of Massachusetts (Fowler v. Butt, 6 Mass., 63,) exercising equity powers, where Story, *arguendo*, insisted upon the equitable interposition of the court in favor of the tenant, but Sewell, Justice, in delivering the opinion of the court, showed that no such equity existed against the express covenants of the lease. These decisions are important, as regards even the present case, because they serve to show that courts of equity cannot, any more than courts of law, relieve against the express terms of a contract, where no fraud, accident or mistake has intervened; and that this court is bound to put the same construction upon a covenant, and to give it the same effect that a court of law would do. Same position in Gates and Calvin v. Green, 4 Paige, 355.

Touching the question of relief by injunction in favor of a tenant or lessee, Hilliard on In., 586 says: "The earlier cases allowed an injunction against an action for rent where the premises had been accidentally burned. But the latter theory is, that the lessee is, *pro tanto, a purchaser*, and the loss by fire must fall on him." Brown v. Quilter, Ambl., 621; Camden v. Morton, 2 Ed., 219; Hare v. Groves, 3 Anst., 687; 1 Fonb. Eq., 374. Same in the late Pennsylvania case of Improvement Co. v. Schmoele; Note. A, Hill on In., 583.

Did not Payne lease of Fowler his (Fowler's) interest for the term of five years, as shown by the plain language of the agreement? Did not Payne then become the *purchaser, pro tanto*, of Fowler's half interest in the property? Did not Payne take possession of the entire interest, or estate, and have it in his possession and under his absolute control when the house was destroyed by fire? If Payne has rent to pay after the destruction of the property by fire, it is his misfortune, and certainly not the fault of Fowler, the lessor. Payne might have protected himself by an exception in the lease, and did not see proper to do so. The lease is absolute and unconditional. Payne became the sole owner of the property for five years from the date of the lease, and when he complains to Fowler of his loss, and prays of the Chancellor relief by injunction, *res perit suo domino*, is a sufficient answer to all he says.

4th. The Chancellor prefaces his decree in this case with a lengthy written opinion, which, though it is not a part of the record, it so appears in the transcript in the case. He declares the agreement between Payne and Fowler "entire as to the renting, insuring and repairing of said property, and the payment of taxes." That the agreements therein were "mutual and dependant; that the refusal to repair or rebuild by the said defendant, discharged the obligation of complainant for rent after such refusal."

1st. While the contract between the parties is in one sense an entirety, yet, in its subject-matter, intendments and purposes, it is, in its parts, as separate and distinct as if

written at different times, and embraced in different instruments. It embraces four things, and each of them stands separate and apart from all the rest, and can be executed or not, by the parties without any reference to the others. First. Fowler being a resident of Mobile, Alabama, and Payne of Meridian, Mississippi, and having obtained no deed to the property from the Trustee making the sale, as shown by the date of the deed, the agreement first recites that they are joint and equal owners. Second. Fowler rents his one-half interest to Payne for five years, at fifty dollars per month, payable quarterly. Third. Either party, wishing to sell his interest, should give the other the preference as purchaser. Fourth. Each party was to pay one-half of the taxes, and one-half of all expenses of insuring and repairing said property, "as might be mutually agreed upon."

2d. Are these different stipulations in the agreement between Payne and Fowler "mutual and dependant?" What is a mutual and dependant contract? A mutual promise or agreement "is one simultaneously made by two parties to each other, each promise being the consideration for the other." 1 Bouvier's Dic., 203; 14 Mess. & W. Exch., 855. A dependant contract or agreement is "one which it is not the duty of the contractor to perform, until some obligation contained in the same agreement has been performed by the other party." 2 Bouv. Dic., 460. Are the agreements in this instrument mutual in the sense of that term? Did Payne rent of Fowler, and agree to pay him fifty dollars per month, in consideration that Fowler would give him the preference, should he desire to sell his interest? Or did Fowler agree to pay one-half of the taxes, in consideration of Payne's agreement to pay one-half of all expenses of insuring and repairing, "as might be mutually agreed upon?" The instrument is in plain language, without ambiguous words or terms. This litigation is about the payment of rent. Does the instrument make the *payment of rent depend on the making of repairs by Fowler, or does it make said payment depend upon the doing or not doing of any-*

*thing by Fowler ?* Dependant contracts are those in which the doing of one thing *depends* or *hangs* upon the doing of another. A agrees to make B a deed to real estate, upon payment by B to him of one thousand dollars. That is a mutual and dependant contract. Is there any such *dependancy* in this instrument between the agreement to pay rent, and the agreement to repair, admitting, for argument, that there was an agreement to repair? We hold, that the agreements in the instrument do not contain one single element of a dependant contract. See Taylor on Land and Ten., § 265, concerning dependant covenants in leases.

As said before, the covenant by Payne to pay rent to Fowler is *express, absolute and unconditional,* and must be performed at all events. The opinion of the Chancellor that the refusal of Fowler & Moore to " repair or rebuild, discharged the obligation of the complainant for rent after such refusal," is not only unsupported by a single authority to be found, but is in direct opposition to the numerous 'authors quoted, (among them Parsons, Kent and Hilliard,) and the great number of cases referred to, in which the precise question has been adjudicated. Chancellor Kent says the question has been settled and put to rest.

5th. The Chancellor declares, in his opinion, that Fowler sold his interest without giving Payne the preference as purchaser, as stipulated in the agreement.

Either party wishing to sell, agrees to give the other a preference, is what the parties say in the agreement. 'Tis admitted that Fowler mortgaged to Moore; but a mortgage is by no means a sale. In equity the mortgagor is the owner. The mortgagee only has a lien on the thing mortgaged. The agreement of each not to sell without giving the other the preference, in no way prevents either party from mortgaging his moiety. Any other construction would violate the very language of the agreement, for a party may not wish to sell, and never intend to sell, but may desire to mortgage. To sell is so widely different from a mere mortgage, that it is only necessary to state the proposition in

order to clearly understand the difference. Suppose Fowler had *sold* instead of mortgaging. The agreement not to sell is without consideration, and therefore void. Being voluntary it could not be enforced. Vassor v. Vasser, 23 Miss., 382, and authorities there cited.

6th. The court should have dissolved the injunction upon bill, answer and exhibits, because the bill, upon its face, does not contain sufficient equity to entitle the party to relief.

The answer in this case is, in effect, nothing but a demurrer. A general demurrer to the original bill had been overruled, and the amended bill being but the same, with one additional allegation, not material, it was answered; and there being no controversy about the main facts, the answer admits them, but insists on the law of the case as not entitling the complainant to any relief. It is therefore but a demurrer in the form of an answer. A bill praying for relief by an injunction cannot be sustained if there is no equity in it. Whether the answer admits the facts charged, or fails to respond to them at all, makes no difference. If there is no equity in the bill, it requires no answer; and although the better practice might be to demur, and, if demurrer overruled, appeal therefrom, yet defendant is not compelled to do so; he can answer and make his answer a demurrer; and so defendant did in this case. See Hilliard on In., § 38, c. 3 ; Williams v. — Berry; 3 Stew. and Port., Ala., 285; Rodgers v. Bradford, 29 Ala., 474.

The granting, as well as the dissolution of an injunction, "rests in the discretion of the court, to be governed by the nature of the case." Hilliard on In., § 16, 17, 18 and 19. If there be no equity in the bill, there can be no injunction. Ib., § 18, Smith v. Lord, 28 Geo., 585. A bill of injunction may be dismissed on motion, without an answer, for want of equity on its face. Hill on In., § 19 ; Richardson v. Prevo, Breese, 167.

7th. The court below erred in decreeing a specific performance of the contract requiring Fowler and Moore, his assignee, or either of them, to appear before the Clerk and

Master and "make arrangements and agreement with complainant to rebuild said tenement at their mutual cost."

We think the Chancellor misconceived the object had in view by Payne and Fowler when they made the agreement under seal, upon the construction of the terms of which the decision of this case alone depends. As shown by the exhibits, the property was purchased by Payne and Fowler —— days before a deed of conveyance was executed to them by Williams, trustee, at whose sale it was purchased.

Fowler lived in Mobile, Ala., and Payne in Meridian, and that the interest of each party might be defined, and the use and disposition of the property might be settled, in the meantime, and before a deed of conveyance was received, they, as joint and equal purchasers, on the day of the purchase, entered into the said agreement.

That agreement was not made solely for the purpose of granting a lease by Fowler to Payne of his (Fowler's) half interest, but it was also made to show the fact that they had that day purchased a piece of property, and had become joint and equal owners of the same. In fact, the chief object in making the agreement was the latter, as the first stipulation therein is, that they are joint and equal owners of the property; and then follows the language showing what disposition was to be made of it: That Payne was to occupy and rent the same for the term of five years, and $50 per month as rent was to be paid Fowler for his half interest —the value of the rent of the whole being estimated at $100 per month. Then follows the agreement that each party was to pay one-half of the "expenses of insuring and repairing said property as may be mutually agreed upon." What is said about insuring and repairing, referred to the future management of the property, and would be binding on both parties as well after the term of five years expired as before, hence it can have no limited reference to that period of time, but refers to the duration of their joint ownership without reference to any particular time; and under that part of the agreement, after the five years' lease had expired,

the stipulation about insuring and repairing would still be binding on each party as before.

But what did the parties mean when they agreed that each would pay one half of all expenses of insuring and repairing "as might be mutually agreed upon?"   The Chancellor, in his written opinion, says : that the "mutual agreement" had reference to the "character and time of repairs, and the manner and amount of insurance ;" and the words "as may be mutually agreed upon," did not "so control the obligation to insure and repair, as to make said obligation a nullity." In short, the court below, by its construction of the words, "as may be mutually agreed upon," requires that language to have reference to the character and time of repairs and the manner and amount of insurance," or that it must be meaningless, or the obligation sought to be created by it, is a "nullity."   A construction of an instrument or agreement, that makes plain, unambiguous words mean a *certain thing or mean nothing*, seems to us by no means reasonable or satisfactory.   When every rule of construction has been first applied to the language used, and the subject matter to which it is applied, and no other construction will give any sense or meaning to the instrument, then it may be reasonable to give certain words a certain meaning, or declare them a nullity. But may not the words "as may be mutually agreed upon," have a meaning quite different from that given them by the Chancellor ; and one that will not only be reasonable, but flow necessarily from the sense or meaning of the very words themselves used ; the time, and position of the parties using them, and the subject matter to which they are applied. How are contracts or agreements to be construed ?   The first thing, is, to ascertain what the parties themselves meant and understood.   Courts will always construe contracts so as to make it mean what the parties intended, (2 Parsons. 6,) and they will not adopt any construction which will do violence to the rules of language or law ; nor will words be forced from their proper signification, and made to mean a certain thing or nothing.   All the parts of the contract will be

construed in such a way as to give force and validity to all of them, and to all of the language used, where that is possible. (2 Parsons, 16.)

Here are the parties, on the day they have purchased a house and lot, making an agreement as to the future use and disposition of it. Among other things they say : each party is to pay one-half of insuring and repairing "as may be mutually agreed upon," There is an agreement there, but what is it? Is it an *agreement* to insure and repair? We think not. They do not say so. They could not have so intended. It is not, nor can it be construed to be anything, but an agreement *to make an agreement.* Hence the words, "as may be mutually agreed upon ;" "may," having an undeniable reference to the future. We need not agree upon the matter of insurance or repairs, here to-day, while we are making this contract between us; but we will agree *now*, that *hereafter*, when we see proper, we will do those two things; that is, insure and repair, "as may be mutually agreed upon" by us. Does not that construction appear natural and reasonable, and harmonize with the language used, referring the whole matter to the time of making the contract, and the object had in view in making it?

How can it be contended, that Payne and Folwer, in making said contract, had reference by the "mutual agreement" to the character of repairs and the manner and amount of insurance? Upon what is such a conclusion based? Not upon anything in the instrument itself, as it does not contain one word about the "character and time" of repairs, and the "manner and amount" of insurance—and the very fact that nothing is said about those things, shows that no conclusions in regard to them were formed in the minds of the parties contracting; and for that reason, they referred those matters to the future for determination ; and simply said : each party will bear one-half the expenses of insuring and repairing "as may be mutually agreed upon." That is, we do not now agree to insure or repair, but *mutually agree* to make that

agreement *hereafter ;* and when we do, each one of us will bear an equal share of the expense.

The Chancellor below not only construes that part of the article referred to, to be an agreement made by Payne and Fowler to insure and repair, but he construed the word repair to mean rebuild, and the house having been destroyed by an accidental fire, he proceeds to decree : that the agreement which *he makes by construction*, shall be specifically performed, and that the house shall be rebuilt, and he proceeds to order or decree that "the defendants be allowed sixty days to make arrangements and agreement with said complainant to rebuild said tenement at their mutual cost." That a court of equity will, under some well defined facts and circumstances, compel a party to rebuild a house, when he has so covenanted, there can be no doubt—but in the present case, we hold (1st) that there is no covenant upon the part of either party *to even repair ;* and (2d) admitting for argument, that there is the word *repair*, as used by Payne and Fowler, cannot be understood to mean *rebuild*.

Such a construction of the word *repair*, is not justified by the context nor the time or subject matter of the contract. The parties could not, when they said, each would bear one-half the expense of insuring and *repairing*, have meant, insuring and *rebuilding*. They were certainly thinking about protecting themselves against loss by fire, and preserving the building, by putting on it such repairs as it might, from time to time, during the term of the lease, or afterwards require ; and that at some future time, they would make agreement about those things.

That the word repair has, in some cases, been construed against tenants, in covenants for leases, to mean rebuild, we will not deny ; but here, there is an attempt to make that word mean rebuild as against the landlord, when, (even admitting there was any agreement at all to repair) there is nothing in any way connected with the use of the term, that could justify the conclusion that by the use of it either party intended to give it any other signification than the usual one :

to make *repairs*, but admitting for argument, that the word repairs should be construed to mean rebuild, can a court of equity force (Fowler or Moore) appellant, to rebuild under the state of the facts existing in this case? In 2 Story's, Eq. Juris., § 725, 726, 727, the exercise of this power is fully discussed, and the author says: "The doctrine as to rebuilding cannot be said to be entirely settled against the jurisdiction, but that of repairs certainly is," since Lord Rosslyn, in one of his leading judgments maintained that where the covenant to build or rebuild, had a definite certainty as to size, materials, etc., it ought to be decreed in equity to be specifically performed. But, if it was loose, general or uncertain, then it ought to be left to a suit for damages at law.

\*       \*       \*       \*       \*       \*       \*       \*

"Then I should have been called upon to execute, not the agreement the parties made, but all the supplemental circumstances which reflection had suggested to one of them, upon which the other came to no agreement.  \*   \*   \* Therefore, upon that case, (Mosely v. Virgin, 3 Veasey, 185,) I must have left them to what they could do at law."   \*

.  \*   \*   "I cannot mend the situation of the parties; for it is exactly that case in which any sensible and fair-minded man would say they have entangled themselves, and it is right that they should come to a new agreement upon it; but I cannot decree a new agreement. The agreement is very inconvenient to them in consequence of their rash and ill-judged conduct; and there is no remedy except by their coming to a new agreement. *I cannot make an agreement for them.* The consequence is, the bill is dismissed."

Apply the legal principles of this case to the one before the court, and let the agreement read as the Chancellor construes it, thus: Each party is to pay one-half of all expenses of insuring and *rebuilding*, "as may be mutually agreed upon." Is that language certain and definite as to the size, materials, etc., of the house to be rebuilt? Or, is it "loose, general or uncertain?" and is it not so "undefined" that the court could not describe it as a subject for the report of

the Master? As to the description of the property, or building, we find in the decree that the Clerk, as Master, is ordered to give complainant and defendants notice to appear before him " at a time and place certain," and make " arrangements and agreement " to rebuild said tenement at their " mutual cost," unless the defendants, before the expiration of sixty days from the date of the decree, should themselves make said arrangements for rebuilding, with complainant. " Said tenement " is further described in the finding of the facts by the court as " the tenement mentioned in said pleadings." Upon examination of the pleadings, we find the only description of the building to be, " a valuable brick building known as the Stonewall Bar and Billiard Saloon." The Master then has nothing to guide him in executing the decree to have Payne & Fowler or Moore, to rebuild a house, except that it is to be the " tenement mentioned in the pleadings; " and that is, " a valuable brick building." Could anything be more loose, indefinite and uncertain? What is there to govern the Master should the parties come before him? How could he tell them what kind of a building they were to agree to build? The Master is made by this decree vice-superintendent of building in chancery. If he does not know himself the size, form or cost of the building he is ordered to have erected, how are Payne & Fowler, the proposed contractors, to know what kind of a house they are required to rebuild? How would he define a " valuable brick building?" How long, how high, and how wide shall it be? How much shall it cost to make it " a valuable brick building?" What style of architecture shall it be? Shall it have an iron front or not? How many doors and windows shall it have in it? Shall the roof be made of tin, slate or shingles? Part of the description is, that it was known as " a Bar and Billiard Saloon." Of course the Master must have it erected for that purpose again. How shall it be finished for that purpose? How will the Master locate the building? The lot is only described in the bill as the " east half of lot No. 103, on the corner of Lee and First streets, in

the city of Meridian." How wide and how deep is the lot? What part of it shall the building cover, all of it or only a part of it?

All of these are very pertinent and important questions, and will certainly arise before the Master when he is requiring o the parties to make " arrangements and agreements " to have a " valuable brick building " re-erected, which was " known as the Stonewall Bar and Billiard Saloon."

It is very apparent, that even adopting the Chancellor's construction of the word *repairs*, and make it mean *rebuild*, that there being no agreement as to size, form, cost, etc., of the building, it is perfectly impracticable to have it specifically performed. Courts of equity are very cautious in decreeing specific performance of a contract to build. The power is, at least, doubtful in nearly all cases in which it is asked. 2 Story's Eq., § 725, 726, and note 1, p. 31, ib.; Errington v. Ainsley, 2 Bro. Ch. R., 343; Lucas v. Comeford, 1 Vesey, 235. There was a prayer in the bill for specific performance of contract to rebuild. Lord Thurlow, Chancellor, said: " I am not inclined to follow the precedent of building a house under the direction of the court any more than of repairing one." See notes 1 and 2 to this case, where the question is further discussed, and authorities referred to.

But the covenant is " to pay one-half of all expenses of insuring and *repairing*, as may be mutually agreed upon." It is admitted that a covenant to repair cannot be enforced. Eden on In., 21, 22, 3 Vesey, 33; 16 Vesey, 402; 2 Story's Eq. Jur., § 727; ib., § 716, (n.) and § 725, and Taylor on Land. and Ten., § 685.

8th. An attempt is made to discover an equity, in the fact that Payne and Fowler were joint tenants, or tenants in common, as the deed to them shows them to be. The fact makes no difference so far as the agreement to lease by Payne from Fowler is concerned. In making that lease, they did not covenant with each other as *tenants, joint or in common*. They, in the matter of the lease, covenanted with

each other as strangers. One joint tenant may lease of his companion his moiety; he may contract with him " for that purpose as with a stranger." Taylor on Land. and Ten., § 115; Kay v. Goodwyn, 16 Mass.. 1. Suppose Payne had purchased Fowler's half interest in the said building, and given him for it his note for $2000, due in three days; and before the note became due the building was destroyed by fire. It will not be denied that Payne would have the note to pay. The fact that before the purchase he and Fowler were co-tenants, would avail him nothing. So, when Payne leases for five years, he becomes a *purchaser for five years.* If, then, a fire occurs during the lease, upon what ground can he claim equitable relief against the payment of rent, any more than in the case of the sale he could against the payment of the purchase money? If he is entitled to equitable relief in one case, he is in the other.

9th. He who asks for a specific performance of a contract must show every fact necessary to authorize the court to render the decree; (Gardiner v. Edwards, 5 Vesey, 591, and note 2 to Mosely v. Virgin, 3 Vesey, 184,) for it is not a matter of right in the party seeking it, but of sound discretion in the court. 2 Story's Eq. Jur., § 769 and 742. It requires much less strength of case to resist a specific performance than it does to enforce it. Ib., and Vigers v. Pike, 8 Clark & Fin., 562, 645, and Lord Cottenham's remarks, p. 645.

10th. But should Payne and Fowler, or Moore, fail to come before the Master and agree to rebuild, the court decrees that the lot shall be sold for partition and division. What reason is there for division or partition before the expiration of the term? Neither Fowler or Moore have any interest in the realty until after the 5th day of November, 1872. Is it just or equitable to sell the interest in future of Fowler or Moore to save Payne from a loss which he brought upon himself by failing to provide against? It is no part of the duty of courts of equity to relieve parties from the losses or

misfortunes resulting by accident, and which they could have easily provided against before hand.

11th. Payne comes into court with the utmost impropriety of conduct. He insists in his bill that Fowler shall assist in what he supposes is, or ought to have been, an agreement to repair; yet, at the same time, he refuses to pay rent, and denies Fowler's right to demand it, because of the destruction of the premises. He who asks equity must first do equity. Let Payne first keep his own covenant with Fowler—pay the rent to him as he expressly agreed to do—and then he may, with some propriety, demand of Fowler a performance of his agreement, if any, to rebuild, he has made.

12th. If complainant's construction of the agreement be correct, and Fowler is bound to repair or rebuild, then his refusal to do so is a breach of his covenant; and Payne can have his action at law thereon; and he has therefore sought his remedy in the wrong tribunal. No reason, such as insolvency, or anything else, is given in the bill, why Fowler could not be made to respond in damages in a suit at law. But it may be said that the agreement is so indefinite, or loosely worded, that the construction a court of law would be bound to put upon it would leave it inoperative. If that be so, then a court of equity is not bound to so construe it as to make it operative. Gladstone v. Birley, 2 Meriv., 404. Payne may not in the agreement have provided a legal remedy; he does not, therefore, have an equitable one, unless he has an equitable right. Wake v. Conyers, 1 Eden, 335. It is a general rule that courts of chancery will take care that injustice is not done, (Parkhurst v. Lawton, 2 Swanst, 209,) yet it seems too universal a position to hold that the courts will act in every case to prevent injustice. Gardner v. Edwards, 5 Vesey, 592, Baleman v. Willoe, 1 Sch. and Lef., 204.

13th. Payne complains in his bill, of his loss, and that at the same time Fowler demands the rent. He (Payne) became, by the lease, the sole owner of the property for five

years from the date thereof.  Hill on In., 686, and other authorities cited.  He had absolute control of the property before and at the time of the destruction of the building, and he might have protected himself by insurance.  It was much more to his interest to insure than it was to Fowler's; and neither Fowler nor his mortgagee could prevent him from insuring.  Neither Fowler nor his mortgagee regard themselves as having any interest in the property, except to collect the rent, until after the expiration of the term.  The opinion of the court says that the contract bound both. "parties to insure at mutual cost."  We have shown that the agreement will not bear that construction; and if it did, was there anything to prevent Payne himself from insuring the property and thereby protecting himself against loss by fire ?  Is Fowler to be held responsible for Payne's neglect to protect his (Payne's) own property ?  It is enough that Fowler, at the end of the term, has to receive his half interest in the property with no building upon it, without being charged with what Payne lost by negligence, misfortune or want of foresight.

14th.  This case, when stripped of all the extraneous immaterial and collateral matter by which the complainant seeks to avoid the main and only issue, amounts simply to this :  Payne leased of Fowler his (Fowler's) interest in a building for five years, and because of the accidental destruction of the building by fire a year or two afterward, the contract became an unfortunate one for him.  He files his bill in equity asking to be relieved from payment of rent, alleging as grounds for such relief that the demand of Fowler, or Moore, his mortgagee, for rent is " unjust, oppressive and unconscionable."  No fraud, accident or mistake is charged, nor are there any particular facts stated, showing wherein the agreement is " unjust, oppressive and unconscionable." Admitting it to be true, courts of equity will not grant relief because of " hard and unconscionable bargains."  2 Story's Eq., § 769.  If Payne's agreement with Fowler is

" unjust, oppressive and unconscionable," he so made it him-self; Fowler is certainly not the cause of it, nor ought he to suffer on account of it. Is it " unconscionable " to de-mand the payment of an undisputed and honestly contracted debt? Suppose after Payne leased, and before the term ex-pired, the growth of the city of Meridian, and other favorable influences, had caused Fowler's half interest to be worth $250 per month instead of $50, would Fowler have been heard asking relief in a court of equity against Payne, al-leging that his agreement with him (Payne) was " unjust, oppressive and unconscionable ? "   Of course he would not, nor will Payne be.   As Fowler, in that case, would be com-pelled to abide by his contract, so will Payne in this case be required to do the same thing.*

*Yerger & Nugent,* for appellants:

There are two questions involved in the appeal from the decree of the court below in overruling the motion to dissolve the injunction granted the appellee, and refusing to dismiss the bill, filed by him, for decreeing a specific performance of the contract.   The first question is, whether a party who has been sued in the circuit court of his county upon the same agreement, which is the subject matter of the present con-troversy, and who pleaded in that court in bar of a recovery, the same facts and the same defense here relied upon, can, when his defense fails, resort to a court of chancery for an in-junction and the relief denied him by a court of law.

The second question is, whether, this being allowed, the ap-pellee has any grounds for the relief prayed by him.   The consideration of these two questions, pre-supposes that the agreement filed with the bill is a valid lease.

As to the first, the transcript of the record from the county court shows that the same matters of defense were there pleaded, which form the grounds for the injunction, sought in this suit.

---

*NOTE.—The Reporters will insert this brief in the report of this case.
                                           E. G. PEYTON.

The courts of law and chancery had concurrent jurisdiction in the premises, the appellee elected to defend in the county court, and failed. He has therefore made his election, he cannot pretend again to present the same defense in a court of chancery, *unless in his bill there is an express averment of fraud, surprise, accident, or mistake,* and some showing to account for the laches or delay in asserting his supposed rights.

In fact, when he submitted himself to the jurisdiction of the county court by offering any defense whatever, whether by demurrer to the declaration, plea in abatement or in bar, it amounted to an election on his part of the jurisdiction, and. having made such election, he must make his defense in that forum, whatever defense he may there fail to make will be considered as having been waived.

To hold any other view would be simply to say, that a court, one of the special prerogatives of which is, to prevent a multiplicity of suits, should encourage the very thing it was intended to prevent.

The question between the parties .was, therefore, adjudicated, and the demurrer to the bill should have been sus-. tained in the first instance, and the injunction dissolved at the hearing. Lyon v. Richmon, 2 John., ch. R. 51; Arrington v. Washington, 14 Ark., 318; LeGrew v. Gonvemore, 1 John. Cases, 505; Burton v. Hyner, 14 Ark., 32. Hilliard on Injunction, p, 165, § 28, 29, 32; Ib. p. 77, § 4, 6, 10.

But, if we are mistaken in this, does this bill present any substantial grounds for the relief prayed, or any relief? The agreement between the parties is plain, simple, and easy to be comprehended, in all its scope and bearing. There is no express covenant in the lease, that the destruction of the house by fire should protect the lessee from payment of rent, and certainly the court can not make such a covenant by implication in the absence of any such stipulation in the instrument itself. Taylor's Landlord and Tenant, § 375, 378 and note Z, § 375. In fact there is no implied warranty on the letting of a house that it shall be reasonably fit for habi-

tation, or for any purpose for which it was let. Taylor's Landlord and Tenant, p: 275; Patterson v. Patterson, 1 Eng., ch. 96; Coburn v. Green, 4 Paige, 355.

It is said, however, that the agreement between the parties is an entirety, and all the covenants mutual and dependant, and because Fowler declined to release, Payne is excused from the liability to pay rent; grant that Fowler was bound to rebuild, and the consequences claimed does not even then follow as a natural or necessary result, nor has he covenanted to keep "the premises in repair" by express words in the lease—and certainly there can be no implied covenant of the kind.

The lessee could not have set it up in bar of a recovery for rent, and why? Because he had in his own hand, the remedy he desired; he could have made the "repairs" himself and "recouped" the amount thus expended, against the rent claim. The authorites are uniform on this point, and it is held that the failure, on the part of the landlord, to keep the demised premises in repair, is no defense to an action for rent, for this they say, is an independent undertaking. Taylor's Landlord and Tenant, § 331; Ellis v. McConie, 1 Het., 313; Tibbitt v. Percy, 24 Barb., R. 39: Watts v. Coffin, 11 John., R. 495; Osburn v. Eldridge, 13 Wend., R. 339.

It may be admitted that Fowler was bound to pay one-half of the expenses of insurance, and even then the lessee was bound for rents. He could easily have demanded to set-off the money thus expended, against the amount due. If by the terms of the contract Fowler was bound generally to pay half the expenses of insurance, the lessee had the means in his own hands of compelling the performance of the contract as stated, and it was his folly not to have done so.

If the agreement to pay half the insurance and repairing the property, and the lease were mutual and dependant, the one upon the other, the lessee had the remedy in his own hands. He could not expect to retain possession for an unlimited time, and decline to pay rent because Fowler had

not paid half the expenses of insurance, when he had not insured the property himself. There would have been no reason to support any such claim. Payne was, in law, a purchaser of the entire property for five years. His possession was exclusive and absolute during his term, and the loss of the premises must fall upon him. Hilliard on Inj., 586.

This view of the case is strengthened by the use of the words, "as may be agreed upon." That the parties contemplated future events is manifest, that they expected to repair, and insure is evident, but the matter was left for determination, by the parties as the developement of the "growing and thriving city," to use the language of the bill, might justify. So much for the argument, as to the covenants and the plea in that behalf, pressed by the complainant.

The complainant insists that because Fowler refused to assist in rebuilding the tenement destroyed, he is discharged from the liability to pay rent, and places his claim for relief upon the contract between the parties. The construction thus put upon the words employed, appear to us to be far fetched and unwarranted. Fowler agreed to pay one-half of the expenses of insuring and repairing the property, upon a future agreement to be mutually made, between him and Payne, nothing more. What do these words mean? No construction can be adopted that will do violence to the "rules of language" and there is but one meaning to be given to them.

"Repairing" means doing that work which was necessary to keep the house rented in good order, and there is nothing in the written agreement, or in the pleadings, to justify any other deduction or interpretation.

To construe the words according to the "rules of language" and in view of the facts in the case, would induce the conclusion, that the parties simply intended to cover the current expenses of insurance, and repairs, necessary to keep the Stonewall Bar and Billiard Saloon in good order for occupancy, and that neither one of them ever contemplated the accidental destruction of the premises by fire.

The agreement, even if in terms it was stated by the complainant, is not such an agreement as a court of chancery could specifically enforce.

It was not an agreement to rebuild, but an agreement to pay half the expenses of "rebuilding," to adopt the construction of the Chancellor, as may be mutually agreed upon.

If it had been an express agreement to "rebuild," and when that was done, to pay half the expenses incident thereto, and a specific performance of this agreement were decreed, what would be the result? Nothing more than this, to compel appellee to make an agreement to rebuild, by a decree ordering it. Suppose Fowler refuse to perform the decree, what then? Besides this, the agreement to rebuild is of such vague and indefinite character that it could not be enforced, and there is no consideration to support it. 1 Story, Eq. Jur., § 778, 787, 793.

This jurisdiction of the chancery court, however, in cases of this sort, is still a matter of doubt. It has been denied in some cases, because there can be a full compensation at law in damages, and if any general rule can be deduced from the authorities, it is this, that courts of equity ought not to decline the jurisdiction for the specific performance of a contract to rebuild, whenever the remedy at law is doubtful in its nature, extent, operation or adequacy, and the covenant is not loose, general or uncertain, but has a definite certainty as to size, materials, etc. 1 Story, Eq. Jur. § 727, 728.

There was no proof taken in the case at all: It stood on bill, answer and exhibits. They disclosed the facts that Fowler had not sold the lot, but simply mortgaged it, and yet the court upon this showing has found facts to exist, of which there was no proof whatever, has engrafted upon the contract covenants not made, and which were not even in the mind of the parties at the time, has fixed the size, materials and dimensions of the house required by the complainant, and upon the showing *made in the decree alone,* for the sake of compelling the performance on appellee's part of the equity thus

created, has ordered the appellees to make arrangements with the appellant to rebuild the tenement burnt, at their mutual cost.

An agreement to make an agreement to "repair and insure," and pay half the expenses incident thereto, fairly tortured into an agreement to make an agreement to "rebuild" the tenement purchased in case of its destruction by accidental burning, with the additional covenant, that appellee was not to pay rent while the rebuilding of the tenement was going on ; words simple and having a definite signification attached to them, and expanded by the conscience of the court until the record is amazed at their extension, and the appellants are desirous to make an agreement which in all human probbability they never would have thought of doing.

As a pure matter of natural justice and right, we submit the decree was wrong, as a matter of policy, it cannot be maintained, appellee was in possession of the property exclusively, he could have protected himself against a loss by fire, he could have paid the insurance and "recouped" the amounts paid against the rent claim of appellants, he could have repaired the premises so as to keep them in proper condition for habitation and use, and "recouped" the amount thus expended against the accruing rent; and had he done all this, he would have been the gainer when the loss occurred, because Fowler would not have been entitled to the amount received by him from the insurance.

As a matter of policy, to compel the tenant to pay rent is proper. It would tend to prevent carelessness and protect property.

*Frank Johnston,* for appellee.

The counsel for appellants seek to place the whole case upon the technical rules that regulate the relations between landlord and tenant, and refuse to recognize any right of Payne except as a tenant of Fowler. Or, more accurately stated, they refuse to admit that he has any rights at all;

the contract is reduced in the first place to a lease, and is again *subdivided* into an unconditional covenant to pay rent; in other words, the entire contract is ignored, except so far as it binds Payne to pay rent.    Even admitting that the respective rights and liabilities of the parties are to be tested alone by the law of landlord and tenant, the conclusion arrived at by the counsel for the appellants by no means follow.

A number of cases are cited to the point that a tenant is not released from rent where the premises are totally destroyed by fire or accident.

This we believe is a correct principle, and is applicable to a case where the parties have made no special covenant to repair, when the tenant has not stipulated for a release from rent, or where the landlord has made no covenant on his part to repair.    In the event, then, of a destruction of the property, the rule is that neither the tenant or the landlord is required to repair or rebuild, and the loss, for the time, falls upon the tenant, and the loss for the residue upon the landlord.

This rule was adopted with great reluctance by the English chancellors, and after some struggle against it.    It is regarded as in conflict with all natural equity and justice. Gates v. Green, 4 Paige, 355.

And as a sequence to the rule where the tenant contracts generally to repair, fire or incendiary accidents excepted, a destruction of the property within the exceptions only releaves him from liability to repair, and leaves him liable for rent, as in the absence of all covenant on the subject of repairs.    Cases and authorities sustaining these propositions are not applicable to the case now before the court.    In not one of them was there *a covenant on the part of the landlord* to repair or rebuild.

In the case now before the court, Fowler and Payne covenanted mutually to repair.    So far then as Fowler occupies the attitude of a lessor, this operates against him as a cove-

nant to repair.   In stating the liability of the tenant in such .a case, almost uniformly and without exception it is held that he is not bound to pay. rent.   In stating the extent of his liability for rent, it is expressly said that he is liable for the whole term for rent where the premises are destroyed, except where he expressly stipulated for a release, or where the landlord has covenanted to repair and refuses to perform his covenant.   Chitty on Contracts, p. 338; Taylor's Land. and Ten., § 327, 329; Howard v. Doolittle, 3 Duer., N. Y., 464; Story on Contracts, § 908; 2 Mo. R., 245.

The rule can be correctly stated in other terms, thus : The tenant is not liable for rent for the whole term where the lessor contracts to repair, and where the lessor refuses to perform his covenant where the premises are destroyed during the term.   Again: it is said where a landlord has covenanted to repair, the obligation will be enforced.   Taylor on Land. and Ten., § 331; Wright v. Lattin, 38 Ill., 293 ; Lun v. Gage, 37 ib., 19.

The rule at all events can be correctly stated to be, that the tenant is not liable for rent after the destruction of the premises, in a case where the lessor covenanted to repair and refuses to perform.

*It is urged for the appellants that the lessees' only remedy is an independent action for damages on the lessor's covenant.*   According to the strictness of the ancient law, a tenant was compelled to resort to a cross action for damages for the breach of the landlord's covenant to repair or rebuild.

But it may be considered a *well settled principle* that a defendant need not resort to a cross action, but may set up his damages resulting from a failure on the part of the lessor to repair, against the demand for rent.   Taylor's Land. and Ten., § 373; Myers v. Burns, 33 Barb., § 374.

A lessor's covenant to repair *is a condition* precedent to rent, for it binds him to rebuild.   Taylor's Land. and Ten., § 375, note 2.

It is, however, contended for the appellant, that a covenant

to repair is not a covenant to rebuild.   This is clearly an erroneous view of the law.

In a case where a tenant had agreed to " repair," it was held that he was bound to rebuild where the premises were wholly destroyed by fire, without any fault on his part, during the term.   Phillips v. Stevens. 16 Mass., 238; see also note 2, § 375, Taylor's Land. and Ten.; Payne v. Blackborn, 3 Vesey Jur., 34; Proctor v. Kieth, 12 Mon. Ky. R., 252; Chitty on Cont., p. 336.

On the same point see 1 Story Eq., § 101; Levett v. Fletcher, 10 Mass., 119; 2 Parsons, 672 and note h; Taylor's Land. and Ten., § 364, Myers v. Burns, 33 Bark.; Beacher v. Graves, 2 Count., 86.

We think the following proposition is clearly established by the authorities cited:   That the tenant is liable for rents for the whole term, unless the landlord has covenanted to rebuild, and in the event of the destruction of the property refuses to perform his covenant.   That where the landlord expressly covenants to repair, he will be held liable to rebuild in case of a total destruction of the premises, and that where the landlord covenants to rebuild, and refuses to execute his obligation and sues for rent after a total loss, the tenant, in the same action, can reply the damages resulting from the landlord's failure to perform his covenant to rebuild.

It will be remembered that even where there was no covenant to repair, made by the landlord, the courts were greatly inclined to release the tenant from rent, and according to the plain principles of natural law and justice, he ought to be relieved.   This is the rule of the civil law, and one maintained by the courts of several of the States in America.   1 Bay, S. C. R., 499; 4 Rob. La.; see also Anb. R., 619, and note 1, p. 275, Taylor's Land. and Ten.

The objection is urged that the court had no power to compel a specific performance.   This does not fairly arise in the case, for the Chancellor did not undertake to rebuild the

house. The nature and scope of the decree will be alluded to in the conclusion of this argument.

In Moseley v. Virgin, 3 Vesey, 184, Lord Rossyln in 1796 held that the court had the power. Story, after discussing the jurisdiction, says the opinion of Lord Rossyln, although questioned by the bar, has never been overruled. 2 Story Eq. Jur., 727.

This eminent writer uses the following language: "Independent of authority, there are strong reasons which may be adduced in favor of entertaining the jurisdiction in equity upon a covenant to rebuild." The jurisdiction is maintained upon the ground of preventing a multiplicity of suits, as each installment of rent falls due quarterly, Fowler could bring action at each quarter against Payne. See Story Eq., § 852 and 859.

It is contended that complainant cannot maintain his bill because he defended the action at law, and that the judgment of the court of law on the demurrer to Payne's plea is final.

This argument proceeds upon the ground that the parties are nothing more than landlord and tenant, there is much more in the case than a question between landlord and tenant, and the contract between the parties and their purchase of the property amounts to something more than a lease, the object of the purchase and agreement was not to create a lease, the leasing was only an incident; at most only a subordinate element of the whole arrangement.

The lease is at an end and the bill was filed, and it is clear that Fowler cannot recover the rent without performing his covenant, and that Payne can reply his failure in the action for rent-

The decree of the Chancellor proceeds upon this basis, Fowler is given the option to perform his covenant and carry out the contract, failing to do this, the contract is treated as at an end, and a partition provided for.

The rule that a defense at law precludes a party from set-

ting up the same matter in equity applies to cases where the defense could be fully made at law, and where the court of law had full power.

A court of equity in taking jurisdiction of a cause, will take jurisdiction, as a general proposition, for all purposes, and will adjudicate and settle all the questions between the parties, which spring out of the whole contract, and this principle lies at the root of equity jurisdiction.

It is exercised to prevent a partial adjudication of the rights of parties in another forum, to prevent a multiplicity of suits, and to do full and complete justice in the case.

A covenant in a lease, giving the tenant the option to buy, will be treated as a continuing offer to sell. Williard v. Taylor, decided by S. C. of U. S., Law Term, R., vol. 111, p. 68.

By reference to the decree of the Chancellor it will be seen all the rights of the parties are fully settled according to the equity of the case. Fowler and Moore are given the opportunity to rebuild if they choose to do so. If, however, they persist in refusing, then the Chancellor says that a partition should be had.

A reference to a commissioner is made for the ascertainment of the amount of rent properly due. The damages, if any due to Payne, and leaves the mode of partition to be arranged by a *future* decree, on this point the decree provides that "in the event that Fowler should refuse to carry out the "agreement, then partition should be made." Thus every question is adjudicated, and can it be said that the court had no power to render this decree, because the terms of the contract has been construed by a court of law? A statement of the proposition is its best answer. It may be said in conclusion, that from the commencement of this controversy, Fowler has never seen but one side of the agreement, and he presents the contract and asks the court to see his side of it, and to ignore every thing else. The hardship to Fowler consists in not being permitted to force Payne to perform his part of the agreement, when he has violated all of his own obligations. It is respectfully submitted that the decree should be approved.

TARBELL, J., delivered the opinion of the court:

The questions in this case arise out of a written contract of which the following is a copy : " In purchase of building, known as the Stonewall Bar and Billiard Saloon, on Lee street, in the city of Meridian, Miss.; by the undersigned, on this 5th day of November, 1867, the parties agree : They are joint and equal owners in said property, and the same is to be occupied and rented by S. B. Payne, for the term of five years, at one hundred dollars per month. Fifty dollars per month to be paid to J. N. Fowler, (the other joint purchaser,) payment to be made by said Payne of one-half rent quarterly, in United States treasury notes or current funds. If either one of the above parties conclude to sell his interest in said property, he hereby binds himself to give the other preference as purchaser of the same. Rent of this property to commence on the day we get possession of the same. Each party is to pay one-half the amount due upon deed of trust under which the property was sold, and half of all other expenses incurred in making said purchase, the whole debt amounting to $4000 ; and each bear one-half the expenses of insuring and repairing said property, as may be mutually agreed upon, and also one-half of the taxes, etc. Rent to be paid by said Payne, as above stated, to Messrs. Evans & Ford, attorneys and agents of said Fowler. In testimony whereof, we hereto set our hands and seals, the day and year above written."

(Signed,) · "I. B. PAYNE," [*Seal.*]

"J. N. FOWLER."[*Seal.*]

At the time of this purchase, there was upon this property a valuable brick building, which was destroyed by fire January 23, 1869, up to which date Payne had regularly paid rent to Fowler. Notice of the destruction of the building was given by Payne to Fowler, who refused to contribute anything to rebuild. Fowler had sold or assigned his interest in this contract to Moore, who, sometime after the fire, instituted a suit in his own name, to recover from Payne, rent claimed to be due on his contract. In this action Payne appeared

and pleaded. To the pleas there was a demurrer, which was sustained, and thereupon Payne filed his bill of complaint in equity, wherein he set forth the contract; the loss of the building; notice thereof to Fowler; offer and request to rebuild; propositions to buy or sell; the transfer of his interest by Fowler to Moore; the suit of Moore to collect rent of Payne; payment of rent to date of fire; offer to pay rent on condition of rebuilding; the unconditional refusal of Fowler to contribute to rebuild; a demand of rent for the whole term.

The complainant prays for "such relief as the nature of the case demands;" that the suit at law for recovery of rent be enjoined; that an account of rent be stated; that Fowler or Moore be required to contribute, jointly with complainant, to rebuild, or, in case of their refusal, that said property be sold for partition; and for "such other and further relief as may seem meet, and as in equity and good conscience he may be entitled to," and that Fowler and Moore be made defendants. The answer of the respondents, Fowler and Moore, admits, substantially, all the allegations of the complainant, but so states the facts as to present two questions for decision. As to the suit at law, the answer says, there was a demurrer to pleas of defendant; that the demurrer was sustained, with leave to plead over, in thirty days, that within the time allowed to plead over, this proceeding in chancery was instituted, and the suit at law, enjoined, whereby, the answer insists the complainant elected to proceed at law, and is estopped from prosecuting this action in chancery.

If wrong in this, the answer then insists, that by the contract, the respondents are not bound to rebuild, and that the complainant is holden for rent for the full term stated in the lease, unconditionally, and independently of all other terms or conditions of the contract.

It is further averred in the answer, that the complainant had as ample means of protecting his rights at law, as in equity, and that the payment or collection of rent cannot be restrained by injunction.

There was a motion to dissolve the injunction; that was overruled.

As a further history of this case, it may be added, that it was heard on an amended bill, and the answer thereto; that to the original bill there was a demurrer, which was overruled; that complainant was allowed to amend his bill on motion; and, that on application to the Chancellor for leave to appeal from the decree overruling the demurrer to the original bill, and in overruling the motion to dissolve the injunction, was refused.

The case proceeded to a hearing, when the Chancellor made an interlocutory decree, given here nearly entire, because of the somewhat peculiar terms of the contract between the litigants.

" This case coming on for hearing on bill and amended bill, the answer of the defendants and exhibits * * * the same being submitted to the Chancellor without argument, to be decided by him in vacation * * * and it appearing to his satisfaction that the answer of the defendants admits the facts alleged in the bill of complaint, and it appearing from the pleadings and exhibits in said cause, that the said complainant and the said defendant, Fowler, on the 5th day of November, 1867, made a purchase of the lot and tenement. mentioned in said pleadings, and on said day entered into a contract which was duly executed and recorded, by which, it was agreed that said complainant, and defendant, Fowler, were equal owners of said property, and that the same was to be occupied and rented by said complainant for the term of five years, at a rent of one hundred dollars per month, fifty dollars of which was to be paid to said defendant, Fowler, to be paid quarterly. It was further stipulated between said equal owners, that if either concluded to sell his interest in said property, he would first give the other the preference as purchaser. It was further provided, that each was to pay one-half the expenses of *insuring* and *repairing* said property, as might be mutually agreed upon, and that each was to bear one-half the taxes. *It further appears*, from the pleadings

and exhibits, that the said defendant, Fowler, on the 26th day of May, 1868, conveyed his interest in said property, with the assignment of the rent, by way of mortgage to the defendant, Moore, without first giving to complainant the preference as purchaser. *It further appears*, that said tenement on the 23d day of January, 1869, was accidently burnt, without fault of either party, and that there was no insurance on the same, and that at the time of said burning, no quarter's rent was due on said premises, the rent being paid up to about the 19th of November, 1868. *It further appears*, that said defendants, immediately upon said occurrence, were notified of the same, and in the month of May following were required, in writing, by said complainant, to contribute equally with himself towards rebuilding the same, which request was refused, and that said complainant offered to said defendants to sell his interest to them, or to buy their interest, which was also refused. *It further appears*, that said agreement between complainant and defendant, Fowler, was duly recorded, and was constructive notice to the said defendant, Moore, of its conditions and stipulations, and that he had also actual notice, and that the rights of the said Moore are governed and controlled by said agreement. *It further appears*, that the said Moore commenced his action in the county court of said county, against said complainant in the year 1869, for a half year's rent, alleged to be due, under and by virtue of said contract, and by said answer also claiming the right to collect said rent quarterly, until the full end and term of said five years, without contributing anything towards repairing or rebuilding said tenement, which said action at law was enjoined by this proceeding. *It further appears*, that there is no issue of facts between complainant and defendants, but that the allegations of the complaint are admitted or not denied, by the answer; and the court being of opinion that said contract entered into on the 5th day of November, 1867, was entire as to the renting, insuring, repairing said property, and payment of taxes; that the agreements therein were mutual and dependant, that the refusal to repair or rebuild

by said defendants, discharged the obligation of the complainant for rent after such refusal; that the words, "as may be mutually agreed upon," did not so control the obligation to insure and to repair, as to make said agreement to insure and to repair a nullity; but that, the equitable construction in regard to "the mutual agreement" had reference to the character and time of repairs, and the manner and amount of insurance, and that in case of an unreasonable refusal to comply on the part of either of said parties with said agreement, then said agreement would be enforced by a court of equity; that said contract bound said parties to insure at mutual expense, and if by the default of both, said loss occurred, both were mutually bound to repair the loss; that it would be contrary to equity under said agreement to compel the said complainant to pay the rent, after the refusal on the part of defendants to contribute their proportion towards repairing the loss; and after, also, their refusal to sell or purchase; that said complainant is liable to said defendants for the rent until said refusal; and the said defendants are liable to complainant for the loss sustained by him on account of said property remaining unproductive.

"It is further the opinion of the court, that the rights of the said defendant, Moore, being a purchaser with notice, and governed by the rights of said defendant, Fowler, under said contract.

"*It further appears* that both of said defendants are non-residents of the State of Mississippi, and it not appearing from said pleadings and proof that either of said defendants have any other property under the jurisdiction of this court, except said lot mentioned in the pleadings, it is the opinion of said court that the said property should stand as security to both parties until the rights of said parties are fully settled and adjusted.

"*It is further* the opinion of the court that the said defendant should be compelled, by the decree of this court, jointly with the said complainant, to rebuild; and upon such

refusal or neglect to do so, that said lot should be sold for division and partition amongst said parties, according to their several rights.

"*It is therefore* ordered, adjudged and decreed, that this cause be referred to the Clerk and Master of this court to take and state an account between said parties.

" 1st. To ascertain the amount of rent due under said contract from the said complainant to the said defendant Fowler (or the said defendant Moore), from the last payment of rent previous to said burning, until notice was given said defendants to rebuild, to-wit: in the month of May, 1869; and

" 2d. That he also take and state an account of the loss and damages sustained by the said complainant, caused by the said defendants refusing and neglecting to contribute their proportion toward rebuilding said tenement, from and after said notice and request, made in said month of May, 1869, to rebuild, until the date of stating said account, and that he make due report thereof to this court.

"*It is further* ordered, adjudged and decreed, that said lot stand bound as security for the adjustment of the rights of said parties on final decree.

"*It is further* ordered, adjudged and decreed, that said defendants be allowed sixty days from this date to make arrangements and agreement with said complainant to rebuild said tenement at their mutual cost; that is, one-half of the same to be borne by the said complainant, and the other half by the said defendants, either jointly or severally, as may be agreed upon by them. And that said Clerk and Master summon the parties to this suit personally or by their said attorneys, by previous notice, to be and appear before him at a time and place certain, upon the expiration of said sixty days, for the purpose of agreeing thereon, or refusing the same. And that he make report to this court, etc. And that all other matters and things remain as they are until the coming in of said reports."

From this decree an appeal was prayed and granted. The errors assigned are, the decree overruling the demurrer to

the original bill, the refusal to dissolve the injunction on motion, and the decree last above quoted.

The first question which presents itself in this case is preliminary in its character, viz.:  What is the effect of the appearance of the complainant herein to the suit at law? Did such appearance and plea estop him from invoking the aid of a court of equity?  It will be remembered that there was a judgment upon a demurrer, but not a final judgment in that action.  Referring to the authorities and precedents, it will be found that the grounds upon which chancery will enjoin a suit at law, vary, according to the condition of the latter, whether before or after final judgment.  If, at any stage of the proceedings at law, prior to final judgment, it shall appear that the rights of the parties cannot be fully adjudicated; if the powers of a court of law are inadequate to the justice of the case; if, to any extent, the rights of either party must be sacrificed through or because of the inflexibility of the common law rules; if a court of chancery can give that full, adequate and complete remedy which cannot be obtained in a court of law, then equity may be invoked, and the suit at law enjoined.  Hilliard on Inj. " Suits;" Eden on Inj. " Proceedings at Law."

The cases cited by counsel for respondents, upon this branch of the case, are, when there was a final judgment at law, and the defendants sought to make the same defense in chancery, without showing that the judgments were procured by fraud, or other ground, on which, in this event, equity will interpose.  Such were the cases of 14 Ark., 32; ib., 218; 7 Gill, 189; Hill on Inj., p. 165, §§ 28, 29, 32; 2 Johns. Chy., 51; 1 Johns. Cas., 505, etc.

It may be remarked here, that counsel are not understood as pressing the question of jurisdiction, save upon the ground of estoppel by the appearance and judgment on demurrer in the suit at law.  The position of appellants upon this point, and upon the whole case, is this:  1. That the appearance of Payne in the action at law was an election of the forum in which he would litigate the differences between

himself and Fowler, or Moore, and that the decision of the demurrer therein was conclusive upon the rights of the parties. 2. That unless there is in the lease an express stipulation that rent shall cease upon the happening of a certain event, the tenant is without relief, either at law or in equity, and must continue the payment of rent to the end of the term; though, if there is an agreement to repair by the lessor, the lessee may have his cross action upon a failure to perform this undertaking.

As our State has not been fruitful of cases of this character, it may be well to define somewhat fully and accurately the law pertaining to all branches of the one under consideration.

It is true, that in the construction of covenants, courts of law and equity are governed by the same rules, and though the non-performance of a properly framed covenant by a lessor, will excuse the lessee from the payment of rent, and though a defense under such a covenant might be effective in a court of law, yet, in the case at bar, there are several grounds of equity jurisdiction not cognizable in the former court. Narrowed to the single question of liability for rent upon refusal to repair, and assuming the parties to stand toward each other only in the relation of landlord and tenant, the contract is obscure and can best be construed and enforced in a court of conscience. Add to this the several provisions of the agreement, and the claim for partition, and the jurisdiction of chancery seems to be more than complete.

The cases to which we are referred in support of the claim that a lessee who has stipulated for the payment of rent is without remedy or relief, unless there is in the lease a proviso that rent shall cease in a certain event, are, where there was not only no such stipulation, but no agreement to repair even, so that the undertaking to pay rent was absolute, unconditional and without contingency in fact, in law or in equity. Such were all the cases cited on this point.

A few cases are referred to indicating that a covenant to repair is no defense to an action for rent but that the remedy of the lessee, is by a cross action.   The decisions from which this doctrine is sought to be drawn are either ancient, or, where the lease and the agreement to repair were by several and separate contracts, at difated dates, reduced to writing upon separate parcels of paper ; in fact, several and disconnected instruments ; and by entirely distinct and independent stipulations, neither controled by, nor dependant upon the other.   24 Bark. 39, was one of the last; 13 Wend. 339, was an attempt in a suit between landlord and tenant to *set-off* rent due against costs in another suit.   1 Kernan 216, was an action for rent, where there had been a partial eviction.   1 Comst. 126, was an action for rent where there was no stipulation, agreement or covenant of any sort to repair, and the court rejected proof of the untenantable condition of the leased premises, in answer to a demand for rent, and other similar adjudications ; but these cases are not, in fact, in point.

Modern and well considered cases, however, hold, that while the non-observance of covenants to repair may not be the subject of *set-off* in an action for rent, yet, that the breach of these covenants constitutes a good defense by way of *recoupment.*   This doctrine is fully considered and held in 2 Comst., 283; 38 Ill., 293; 37 Ill., 19; and, particularly, 7 Hill, 53, where all the cases on this point are referred to, and the doctrine is declared, that this defense is admissible at common law upon the principle announced in 4 Wend., 483, and 8 ib., 109.   This principle, say the court in 7 Hill, 53, is understood to be, " that in actions of assumpsit to recover damages for the breach of an agreement, the defendant may set up, by way of *recoupment,* under a proper notice, that the plaintiff has violated the same agreement, and thus defeat a recovery for more than the balance.   The rule is one of obvious equity, and is susceptible of ready and convenient application on the trial.   It adjusts, by one action, mutual and adverse claims growing out of the same contract,

and thus prevents the needless multiplication of suits. In Westlake v. Degraw, 25 Wend., 672, the chief justice, who delivered the opinion of the court, seems to have entertained no doubt that the doctrine of *recoupment* was applicable to a case precisely like the present. And, we may add, like the one at bar. See also, 3 Hill, 171; 5 ib., 76, and ib., 63.

It would seem, therefore, that where, in a lease, there are mutual covenants for the payment of rent and to repair, the breach of the latter, or the damages caused thereby, may be interposed in an action upon the contract for the non-performance of the former.

The statement of this rule, appears to strengthen the grounds of equity jurisdiction in the case before us, by illustrating how far short of full and adequate justice between the parties, upon their contract, a judgment at law would be, especially, when it is remembered, that every quarter would give rise to a repetition of this litigation. But, if it were true, that upon a covenant to repair by the lessor, the lessee could, at law, only resort to a cross action, the grounds of equity jurisdiction might be made still stronger.

But, it is contended on the part of the appellants, that there is in the contract between these parties no covenant to repair. If this be true, that is an end of the case. The contract recites, that " each party is to pay one-half the amount due upon deed of trust under which the property was sold, and half of all other expenses incurred in making said purchase, the whole debt amounting to $4000, and each bear one-half the expenses of insuring and repairing said property, as may be mutually agreed upon and also one-half of the taxes."

As a general rule, contracts are to be construed according to the intention of the parties thereto at the time of entering into it, or, as near thereto, as the language employed and the rules of law will permit. In this case, the parties were not examined as witnesses, and we have to construe this contract by the light we have before us. Was it the intention

of these parties, and did they agree, as a basis for this contract, in substance, that, "as to insurance and repairs we make no agreement; whether we insure or repair we leave an open, undecided matter, to be determined in the future?" Or, did they agree, that, "we will insure and repair, but the amount of insurance and the company, we defer to another time; and as to repairs, the character, mode, style, cost, time, and all other questions pertaining thereto, we are not now prepared to determine, but we will arrange all this after we get possession, and when more at leisure?"

This contract is informal, but its only rational interpretation is, as though it had been written thus: "It is covenanted and agreed, that each party is to pay one-half the amount due upon deed of trust; one-half of all expenses incurred in making said purchase; one-half the taxes; one-half the expenses of insuring and repairing, as may be mutually agreed upon;" and this last clause may be expressed in this form: "It is further covenanted and agreed, that we will insure and repair, each party paying one-half the expenses, but the details of insuring and repairing we will agree upon at a subsequent day."

Insurance and repairs are modern necessities. Every owner of valuable tenements insures against loss by fire, and repairs are no less essential. Indeed, insurance has become a universal practice, and repairs are necessary to retain tenants and for preservation of property. It is not to be supposed these parties hesitated about either, but only as to amount, time, mode, manner, etc. Such is the inference from the language used, "and each bear one-half the expenses of insuring and repairing, as may be mutually agreed upon." If this means anything, it means that insurance and repairs were to be undertaken. The phraseology of this clause, like those which precede and follow it, is affirmative. Manifestly, insurance and repairs were in anticipation, and, most certainly so, in view of the rapid growth and future prosperity of Meridian. It was not natural; it was not business like, for these parties to agree they would not insure

and repair. The presumptions of prudence, of business, and of the other terms of the contract, lead to the construction adopted.

One other suggestion only will be added on this point: If the agreement between these parties was, *not* to insure or repair, it would have been so unnatural, so peculiar, so contrary to common practice and usuage, if not extraordinary, that the parties would have disagreed, or, such plain language would have been employed as to leave no doubt.

In this construction of the contract in this case, a satisfactory rule stated by Parsons in his work on Contracts, (Vol. 2, ed. 1855, p. 6,) is very clearly followed: "The meaning and understanding of parties to a contract shall govern : * * * But when the intent is plain and manifest and the words doubtful and obscure, it is the duty of the judge to endeavor to find out such a meaning as will best answer the intent of the parties."

But the construction of the contract herein given, is that averred in the complaint, and not denied in the answer.

If correct in our construction of this agreement, the question arises, is a covenant to repair equivalent to a covenant to rebuild ? An affirmative answer to this question follows both upon precedent and reason. Taylor's Landlord and Tenant, 234, Sec 4, and authorities there cited. Leavitt v. Fletcher, 10 Allen, 119; Allen v. Culver, 3 Denis, 284 ; Bigelow v. Collamore, 5 Cush., 226 ; Philips v. Stevens, 16 Mass., 238; Walton v. Waterhouse, 2 Sand., 422, a, note (2) ; Abby v. Billips, 35 Miss., 618; Chitty on Con., 336, note 0, etc.

In Leavitt v. Fletcher, the court say: " It has been the established rule of the common law for ages that an express covenant to repair binds the covenantor to make good any injury which human power can remedy, even if caused by storm, flood, fire, inevitable accident, or the act of a stranger." And in that case a covenant to repair was held a covenant to rebuild. See, also, the cases there cited.

It is said in Allen v. Culver, that there is no doubt but that

by a covenant to repair, the lessors are bound to rebuild, in case of total destruction by fire.

·This question was treated in Phillips v. Stevens as so clear as to render a formal opinion unjustifiable.

· The court proceeded to say, however, that "any lawyer, in any village of the commonwealth, could have stated the hazard, (a covenant to repair,) and would have guarded against it, by introducing such an exception, as is now generally adopted in mercantile contracts, "fire or other casualty excepted." And it is added, that "the case of Walton v. Waterhouse, and the cases cited by Sergeant Williams in his note (2) to that case, contain all the law upon this subject; the principle extracted from which is, "that although a man may be excused from a duty imposed upon him by the law, if he is disabled from performing it without any fault of his own; yet when, by his own contract, he creates a duty or ·charge· upon himself, he is bound to make it good, notwith. standing any accident by inevitable necessity; because he might have provided against it by his contract." (6 Mass., 63; Aleyn, 26 ; Platt on Covenants, 198, 275, 284, 582.)

Holding that the jurisdiction of chancery is rightfully exercised in this instance; that the contract contains a coven- ·ant to repair, and that this is equivalent to a covenant to rebuild; it only remains to inquire whether the decree of the Chancellor is in accordance with established rules and the equity of the case at bar.

Though the doctrine is intimated, if not approved by Mr. Story, (Eq. Jur., § § 721, 727, 728,) it is quite doubtful whether courts of equity will undertake to rebuild, nor has the Chancellor in his decree indicated such a power or purpose, as is contended for by the counsel for appellants. By the express language of the decree, following the terms and spirit of the contract, which was to repair, according to stipulation thereafter to be agreed upon, time and opportunity was given the parties by the Chancellor to negotiate, and failing to agree to rebuild, then partition would be decreed. The claim that there is no relief to a tenant who has stipulated for the pay-

ment of rent, and that he must continue to pay to the end of the term, whatever calamities may befall the property, except so far as it is expressly provided in the lease that rent is to cease on the happening of certain events, is but partially correct.

The cases cited in support of this position embrace two classes, or state of facts. One is when there is no provisions for repairs by either lessor or lessee, and the agreement to pay rent is unconditional, absolute, and without reservation for any cause whatever. The other is, where there is no covenant to repair by the lessor, but the lessee undertakes, absolutely and unconditionally, to pay rent, and to make repairs, except in case of inevitable accident and destruction by fire, without fault of the lessee. In these cases, there is no relief to the tenant, either at law or in equity, by the rules of the common law, nor, in the second class, is there an implied covenant to repair on the part of the lessor. 1 Dyer, 33; 3 John., 44; Comyn. 627; 6 T. R., 650; 2 Saund., 422; 4 Taunt., 45; Ld. Ray., 1477; 1 T. R., 310; 18 Ves., p. 115; and other cases quoted by counsel. It is otherwise, however, in such a case, by the civil law, and the adoption of the rules of the latter had, in England for a long period, the most earnest advocates, both in the bar and on the bench. See Gates v. Griffin, 4 Paige, 355, where the practice of the civil law is stated, and the history of the struggle to introduce this branch of the latter into the administration of justice in England. The court in that case, say, that, "a contrary principle, however, finally prevailed in equity courts" of that country, "as well as in the courts of law." And it must now be considered as settled, both in England and in this State, that a lessee of premises which are burned, has no relief against an express covenant to pay the rent, either at law or in equity ; unless he has protected himself in the lease, *or the landlord has covenanted to rebuild.*" And this is the doctrine of a third class of cases, and by these the case at bar must be determined. In short, in case of a lease with covenants for the payment of rent on the one part, and to repair on the

other, a refusal to rebuild by the lessor upon the destruction of the tenement during the term, will, in equity, at least, excuse the lessee from the payment of rent, or to such relief as the circumstances may warrant.   As to *recoupment* of damages by the lessee in a suit at law to recover the rent, see § 331, Taylor's Landlord and Tenant, note 3, p. 236, and the authorities before referred to.   That the tenant is entitled to be absolved from the payment of rent, *in equity*, in case of the destruction of the tenement by fire or other external violence, when the lessor has covenanted to rebuild, and failed to per-form his covenant, see § § 329, 331, 375, 377, Taylor's Land-lord and Tenant, and authorities cited in note 2, p. 274 ; 6 Mass., 63 ; 4 Paige, 355 ; 3 Gray, 323 ; 29 Mo., 245 ; 16 Mass., 240 ; 3 Duer, 464 ; 33 Barb., 401 ; 10 Allen, 119 ; 2 Story on Cont., § 908 ; id., 931, Et. Seq., etc.

As to the power of a court of chancery ; to enjoin the col-lection of rent, even as between landlord and tenant, see the authorities herein cited.

But the case at bar presents several grounds of equity jurisdiction, in addition to those pertaining exclusively to the relation of landlord and tenant.   *Vide*, the several stipula-tions of the contract ; the obscurity of the language in regard to repairs ; the agreement to give the parties the preference to buy or sell ; the right of either to sale for partition ; and the recurring quarterly indebtedness for rent, with a corres-ponding right of action.   (2 Story, Eq. Jur., § 852, 859 ; id., 644 ; 1 Paige, 215.)

From the adjudications referred to, the following proposi-tions are evolved : ·

1.   If a lessee stipulate unconditionally to pay rent, with-out providing for its suspension in any event, and there is no agreement on the part of the lessor to repair, the tenant is without remedy at law or in equity, and must pay the rent to the end of the term, though the tenement be destroyed by fire or other accident.

2.   The same result follows, if the lessee undertakes to re-pair, except in case of destruction by fire or other inevitable

accident, as well as to pay rent. In such case, there is no implied undertaking upon the lessor to repair in any event.

3. Under circumstances, not necessary to be enumerated in the case at bar, the lessee may repair and the courts will enforce the expenses against the lessor. Taylor's Landlord and Tenant, § 331.

4. Neither is it necessary to state when an apportionment or abatement of rent, upon the partial destruction of the tenement, will be adjudged.

5. Prudence dictates that every contingency, by fire or otherwise, shall be provided for in the lease, but if this be not done, and there is an agreement to repair by the lessor, the lessee has his remedy, as herein indicated, either at law or in equity, in case of the destruction of the tenement by fire or other accident, and a suit for rent.

Suffice it to say, that a covenant to repair by the lessor, will be enforced, either at law as before pointed out, or in chancery, upon principles of equity.

The decree should be affirmed, and the cause remanded for further proceedings.